UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOEL I. WILSON,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>MATTIS, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 21-12044<br>Honorable Sean F. Cox<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
[ECF NO. 41]**

### I.　　Introduction and Background

Plaintiff Joel I. Wilson, a prisoner under the Michigan Department of Corrections' (MDOC) jurisdiction, filed this pro se civil rights action under 42 U.S.C. § 1983 against MDOC employees Arnold Mattis, Jeremy Osborne, Joseluis Ibarra, David Verhaar, Jason Masar, Jeremy Ashby, Michael Lamont, Jedidiah Abbott, and Nicholas White.  ECF No. 1.  Other parties and some claims in Wilson's complaint were dismissed on initial screening.  ECF No. 3.  In the remaining claims, Wilson alleges that (1) defendants retaliated against him for stating a verbal grievance; and (2) defendants colluded to harass Wilson for exercising his First Amendment rights.  ECF No. 1.

The Honorable Sean F. Cox referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1). ECF No. 13. Defendants move for partial[1] summary judgment for failure to exhaust administrative remedies. ECF No. 41. For the reasons below, the Court **RECOMMENDS** that defendants' motion be **GRANTED**.

II.  **Background**

Wilson, who is housed at the Central Michigan Correctional Facility (STF), says that he is assigned as a prison legal writer. ECF No. 1, PageID.14. He alleges that, in March 2021, he made a verbal grievance to Verhaar and Mattis about their allegedly improper claim that they had a right under prison policy to dispose of his sheets because they were left on a table and were thus abandoned property. *Id*., PageID.14-15. Wilson says that Mattis threatened that "'[t]his might not go well for you" and then called Wilson an "'uppity n*gger." *Id*., PageID.15.

The next day, Wilson received a minor misconduct ticket for headphones hanging on a hook in the wall, but four other inmates in the

---

[1] Defendants do not title their motion as being for only partial summary judgment, but they concede that issues of fact exist about whether Wilson properly exhausted one claim. See ECF No. 41, PageID.226. Defendants also failed to address one grievance, so the claim related to it should not be dismissed. The two claims that would survive if this Court's recommendation is adopted are described below.

2

same cube who had their headphones in similar positions were not ticketed. *Id.*, PageID.16, 35. Wilson says he was punished with three days of lost privileges. *Id.*, PageID.16.

Wilson then sent a letter to the warden complaining about Mattis and Verhaar's alleged harassment. ECF No. 1, PageID.17, 43. On the same day, Verhaar issued Wilson a misconduct ticket for placing items on his light fixture, and Mattis issued another misconduct report stating that Wilson again hung his headset on the wall. *Id.*, PageID.17, 36-37. Wilson claims that, after he complained about being singled out, Mattis issued misconduct tickets to other prisoners and told them, "'Wilson said that I have to write you a ticket because I wrote him one.'" *Id.*, PageID.17. He says that that several inmates accosted him after Mattis blamed him for their tickets. *Id.*

Wilson alleges that he told Mattis that his use of Wilson's name to the other inmates was improper, and that Mattis responded, "'I can talk to every CO (Corrections Officer) on this compound and make your life a living hell.'" *Id.*, PageID.18. And when Wilson said that was a threat, Mattis allegedly said, "Oh I haven't even begun to threaten you yet?...I can do anything I want to you," and then balled his fist and moved toward Wilson.

*Id.* Wilson grieved Mattis for threatening him. ECF No. 41-3, PageID.268, 270.

In his second remaining claim, which alleges retaliatory collusion by all the defendants, Wilson says that Mattis made good on his threat to make his "life a living hell." ECF No. 1, PageID.23-27. Wilson claims that, in April 2021, Ashby stopped Wilson when he was headed to get insulin after dinner. *Id.*, PageID.24. Ashby allegedly looked at Wilson's identification and said, "'Oh, you're that guy." *Id.* Wilson says that Ashby said that he was going to ticket Wilson "'for being a pain in everyone's ass.'" *Id.* Ashby allegedly issued Wilson a misconduct ticket for being out of place and Wilson was sanctioned with 14 days of lost privileges. *Id.*, PageID.25.

Wilson says he was ticketed again in May 2021 for insolence, causing him to have 10 days of lost privileges, after "Defendant Anderson"[2] identified him as "'that legal writer who got into it with Mattis.'" *Id.*, PageID.25. And when Wilson complained in June 2021 about not getting new sheets and towels, White and Masar allegedly referred to Wilson's

---

[2] Although Wilson referred to "Defendant Anderson" in two paragraphs of complaint, he did not name Anderson as a defendant in the portion of the complaint that identified the defendants. ECF No. 1, PageID.5-10, 25, ¶¶ 82-83.

4

conflict with Mattis, and Masar issued Wilson a minor misconduct report for loitering in the lobby. *Id*., PageID.23. Wilson says that Osborne told him to either accept a sanction of five days of "top lock" or to having his ticket heard by White. *Id.,* PageID.24.

In July 2021, Ashby allegedly instructed Lamont to write a misconduct ticket against Wilson for using the phone after insulin lines. ECF No. 1, PageID.25. When Wilson complained that his use of the phone was permissible, Ashby shouted that Wilson thought he was better than everyone and made trouble. *Id*., PageID.26. Ashby then allegedly issued another misconduct ticket claiming that Wilson disobeyed a direct order. *Id*. Wilson claims that Ibarra later said that Wilson's problem was that he thought he was better than everyone and kept arguing and filing complaints. *Id*. When Wilson complained that Ibarra's statements and harassment were not allowed, Ibarra wrote yet another misconduct ticket accusing Wilson on insolence. *Id.* Wilson says that the next day, Abbott threatened to place Wilson in segregation for harassing officers and filing complaints, and implied that Wilson needed to drop his complaints and grievances. *Id*., PageID.27. Osborne and Ibarra then allegedly threatened Wilson's cousin, who is housed in the same unit, to convince Wilson to drop his complaints or suffer the consequences. *Id.*

5

According to Wilson, defendants acted "together and with the common purpose" of retaliating against him in violation of his First Amendment rights. *Id.*, PageID.14, 27.

### III. Analysis

**A.**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the lack of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id*. at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380

(2007). But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

As noted, defendants claim that Wilson failed to exhaust available administrative remedies. The Prison Litigation Reform Act (PLRA) requires prisoners to properly exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To meet this requirement, an inmate must strictly comply with the administrative process provided by the prison. *Woodford*, 548 U.S. at 93-94. But if an administrative remedy "is not capable of use to obtain relief," it is not "available," and § 1997e will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 643 (2016).

Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). "But a prisoner countering a motion alleging failure to exhaust must

7

offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Parks v. Mich. Dep't of Corr.*, No. 2:20-cv-11673, 2021 WL 3533422, at *3 (E.D. Mich. May 17, 2021), *adopted*, 2021 WL 2820984 (E.D. Mich. July 7, 2021) (cleaned up). Summary judgment based on failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

**B.**

A claim of retaliatory misconduct charge cannot be exhausted through the grievance process. PD 03.02.130 states that decisions about misconducts are non-grievable and must be challenged through a hearing. *See* ECF No. 41-2, PageID.237-238, ¶ J(9), (11). Thus, the "only avenue" for exhausting a claim stemming from a misconduct ticket is by raising it at the misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011); *Smith v. Pallas*, No. 18-1933, 2019 WL 7946345, at *3 (6th Cir. Nov. 7, 2019). Prisoners who plead guilty waive their rights to contest that misconduct tickets were retaliatory and thus do not exhaust their retaliation claims. *See Siggers*, 652 F.3d at 693-94; *Partee v. Trowbridge*, No. 20-12586, 2022 WL 6581114, at *4 (E.D. Mich. Aug. 3, 2022), *adopted*, 2022 WL 4299357 (E.D. Mich. Sept. 19, 2022) (finding that a prisoner who

8

pleaded guilty to a misconduct ticket failed to exhaust his claim that the ticket was retaliatory). To fully exhaust, the prisoner must raise the claim of retaliation at the initial hearing and, if unsuccessful, in the available avenues for rehearing or appeal. *McNees v. Torrey*, No. 1:19-CV-121, 2021 WL 1178627, at *4 (W.D. Mich. Mar. 4, 2021), *adopted*, 2021 WL 1171958 (W.D. Mich. Mar. 29, 2021); *Triggs v. Barnhardt*, No. 2:20-CV-8, 2021 WL 6550824, at *5 (W.D. Mich. Dec. 16, 2021), *adopted*, 2022 WL 170062 (W.D. Mich. Jan. 19, 2022); *see also* MDOC PD 03.03.105, ¶¶ SSS-XXX (describing the rehearing and appeal processes).

Defendants argue that Wilson failed to exhaust his administrative remedies by not raising the retaliation claims in the misconduct hearings and on appeal. ECF No. 41, PageID.217, 224-225. Wilson responds that the misconduct tickets he cites "are not the subject of the complaint but evidence of the harassment alleged."[3] ECF No. 44, PageID.324. But

---

[3] For his claim that defendants colluded to engage in retaliatory harassment, Wilson relies in part on several verbal statements and threats. ECF No. 1, PageID.23-27. But "[v]erbal threats and abuse made in retaliation for filing grievances are not actionable." *Jones v. Washington*, No. 2:22-CV-11843, 2023 WL 1112495, at *4 (E.D. Mich. Jan. 30, 2023) (citing *Taylor v. City of Falmouth*, 187 F. App'x 596, 600 (6th Cir. 2006); *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002)). Thus, the issue before the Court is whether Wilson exhausted his claim that the misconduct tickets were issued in retaliation for the exercise of his First Amendment rights.

Wilson claimed that the harassment, including the issuance of misconduct tickets, was retaliatory. Before relying on the misconduct tickets to support his claims of retaliatory harassment, Wilson had to exhaust those claims through the hearing and appeals process. *McNees*, 2021 WL 1178627 at *4; *Triggs*, 2021 WL 6550824 at *5. As shown by the misconduct hearing reports that defendants submitted, Wilson did not exhaust any claims that tickets were retaliatory. ECF No. 41-4.

Wilson pleaded guilty and waived his hearing and appeal rights in response to two tickets—one for having items thumb tacked to his wall and one for being "out-of-place." ECF No. 41-4, PageID.275, 281. Wilson argues that he was "forced to plead 'guilty' to several misconducts" because the "plea of guilty allowed [him] to receive a lesser punishment than if he had pled 'not guilty.'" ECF No. 44, PageID.326 (cleaned up). But he presents no evidence by affidavit or otherwise to support his claim that he was "forced" to plead guilty. *See* 28 U.S.C. § 1746 (stating that a declaration subscribed "as true under penalty of perjury" may serve as evidentiary support); *Wingz & Thingz 1 v. Penn-Star Ins. Co.*, 547 F. App'x 766, 767 (6th Cir. 2013) ("The district court properly rejected plaintiff's unsigned and unsworn 'affidavits.'").

10

Documents about two other misconduct hearings—one for insolence and one for disobeying a direct order—make no mention of retaliation. ECF No. 41-4, PageID.283, 285. And in his response, Wilson did not allege or produce evidence to show that he exhausted his claims during the misconduct hearings. ECF No. 44.

At two hearings in which Wilson did raise retaliation, he did not appeal the findings of guilty. During the hearings involving claims that Wilson had contraband on a light fixture and items tacked to the wall, he reported feeling targeted and complained that the tickets were issued in retaliation. ECF No. 41-4, PageID.276-279. Wilson was found guilty at both hearings. *Id.*, PageID.276, 278. In an affidavit from Jamie Badgerow, an MDOC litigation coordinator, he says that he "reviewed the records for misconduct ticket appeals" and that Wilson did not appeal the misconduct tickets at issue. *Id.*, PageID.273-274. Wilson does not show otherwise.

Defendants did not address one misconduct ticket Wilson alleged in his complaint. He claimed that Ashby gave him a retaliatory misconduct ticket in April 2021 for being out of place, which resulted in loss of privileges for 14 days. ECF No. 1, PageID.24-25. Defendants do not mention this ticket in their brief or in Badgerow's affidavit. *See* ECF No. 41, PageID.217; ECF No. 41-4, PageID.273-274. Thus, they did not meet their

11

burden of proving non-exhaustion. *See McSwain v. West*, No. CV 20-12684, 2021 WL 6066354, at *9 (E.D. Mich. Sept. 27, 2021), *adopted*, No. 220CV12684TGBDRG, 2021 WL 6063655 (E.D. Mich. Dec. 22, 2021) (finding that defendants failed to meet their summary judgment burden because they did not address retaliatory misconduct tickets alleged in the complaint and did not present evidence showing non-exhaustion).

In sum, defendants proved that Wilson did not exhaust six retaliatory misconduct claims through the hearing process, but provided no proofs related to the alleged April 2021 misconduct ticket.

**C.**

The Court now turns to Wilson's allegations of retaliatory harassment outside the misconduct hearing process. MDOC Policy Directive (PD) 03.02.130 (effective March 18, 2019) has a three-step procedure that prisoners must follow to complete the administrative review process and properly exhaust grievances. ECF No. 41-2. If prisoners do not follow the "critical procedural rules," they do not exhaust administrative remedies. *See Woodford*, 548 U.S. at 90. And the PLRA requires that prisoners exhaust administrative remedies before filing lawsuits. 42 U.S.C. § 1997e(a).

Supporting their argument that Wilson failed to exhaust retaliation claims in his grievances, defendants submit a certified grievance report showing that Wilson filed three relevant[4] grievances that proceeded through all three steps of the process—Grievances STF-21-06-0371-28B, STF-21-06-0370-28B, and STF-21-03-0206-28B.[5] ECF No. 41-3, PageID.245-247. The evidence shows that Wilson failed to exhaust his retaliation claims in STF-0371 and STF-0370. ECF No. 41-3.

For a misconduct ticket for loitering in the lobby without staff authorization, the records show that no hearing was held and no sanctions were imposed. ECF No. 41-4, PageID.274, 280. Because Wilson had no hearing, "[h]is remedy was to file a grievance so that there could be administrative review of his allegations." *Parker v. Turner*, No. 20-12794, 2022 WL 722192, at *4 (E.D. Mich. Mar. 9, 2022). Wilson filed a grievance about the incident, but he did not allege that Masar issued a retaliatory misconduct ticket. Rather, in Grievance STF-21-06-0370-28B, Wilson

---

[4] The Court omits Grievance STF-21-03-0223-28J, which concerned the wrongful denial of grievances, a claim that Judge Cox dismissed in an opinion and order. ECF No. 3, PageID.97 ("Plaintiff is not entitled to relief on his claim that the defendants wrongly denied his administrative grievances").

[5] The Court will refer to the grievances by the four-digit grievance number (e.g., STF-0370).

complained that Masar threatened to issue a loitering ticket when Wilson was in the lobby to request legal mail forms and that the was meant "to protect PC White's racist pride."  See ECF No. 41-3, PageID.256.

And STF-0370 was one of two grievances that were rejected for being procedurally deficient.  Generally, "as long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust."  *Bailey v. Michigan Dep't of Corr.*, No. 19-13442, 2020 WL 4934314, at *4 (E.D. Mich. Aug. 24, 2020) (cleaned up).  But if a court cannot discern the rationale for the rejection, the propriety of the rejection is a question of fact.  *Id*. at *5.

STF-0370 was rejected because Wilson's statement that Masar intended "to protect PC White's racist pride" violated a policy prohibiting a grievance from including language that demeans a person's character "unless is it part of the description of the grieved behavior and is essential to that description."  ECF No. 41-3, PageID.253-257.  The rejection of the grievance, which was upheld through Step III, was permitted by the policy directive.  P.D. 03.02.130 ¶ J.6.  In STF-0371, Wilson's claim that he was "being abused and bullied by PC White" was rejected as "vague" at Step I and upheld through Step III.  *Id*., PageID.248-252; PD 03.02.130 ¶ J.1.

14

The Court finds no error with the finding that STF-0371 was vague as it included no detail about the alleged abuse and bullying. *See Vandiver v. Correctional Med. Servs.*, Inc., 326 F. App'x 885, 891 n.3 (6th Cir. 2009) (holding that a grievance rejected as vague did not satisfy the exhaustion requirement).

Wilson also filed his complaint too early for the claims related to STF-0370 and STF-0371. Step III grievances must be directed to the Grievance Section, which will "generally respond[ ] within 60 *business* days." PD 03.02.130, ¶ II (emphasis added). Thus, Wilson had to wait "to receive a Step III response, or allowing the 60-business-day period to expire, before filing his complaint in federal court." *Beal v. Washington*, No. 1:21-CV-522, 2022 WL 17094179, at *4 (W.D. Mich. Oct. 18, 2022), *adopted*, 2022 WL 17093505 (W.D. Mich. Nov. 20, 2022). The Grievance Section received Wilson's Step III appeals for both STF-0370 and STF-0371 on June 28, 2021. ECF No. 41-3, PageID.248, 253. The rejections were upheld on September 17, 2021, and the 60-business-day period expired on September 22, 2021. Wilson filed his complaint on August 25, 2021, before the Step III grievances for STF-0370 and STF-0371 were exhausted.

15

In STF-0206, Wilson complained about Mattis using his name when issuing misconducts to other prisoners, and he said that Mattis retaliated with threats after Wilson made an oral grievance to him about the issue. ECF No. 41-3, PageID.270. Wilson claimed that Mattis violated PD 03.03.130, which protects prisoners from mental or physical abuse by staff. *Id.*, PageID.271. The grievance was rejected at Step I, stating that Wilson "failed to file in compliance with PD 03.02.130" because the grievance was "vague/illegible/no violation cited." *Id.*, PageID.268-269. In the Step II appeal, Wilson says that the grievance was wrongfully rejected and that there appears to be a "cover-up" to deny him access to the grievance process in violation of the First Amendment. *Id.* Both his Step II and III appeals were denied, and the rejection was confirmed through Step III. *Id.*, PageID.264-266.

Mattis "concedes that there are issues of material fact as to whether STF-206 should have been rejected, and therefore, at this time, does not seek dismissal of the claims raised in STF-206." ECF No. 41, PageID.226. This claim and the one related to the April 2021 misconduct ticket are the only claims that should survive.

## IV. Conclusion

The Court **RECOMMENDS** that defendants' partial motion for summary judgment (ECF No. 41) be **GRANTED**, and that all but the claims alleged in STF-0206 and the April 2021 misconduct ticket be **DISMISSED WITHOUT PREJUDICE**. With this recommendation, the only two defendants remaining should be Mattis and Ashby.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: March 20, 2023

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 20, 2023.

s/Marlena Williams  
MARLENA WILLIAMS  
Case Manager
